IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Yusuf Bilaal, a.k.a. Daniel P. McKinney,   Case No. 3:04CV07189

    Plaintiff,

    v.   ORDER

Defiance Publishing Co., et al.*,*

    Defendants.

On April 13, 2004, plaintiff pro se Yusuf Bilaal, a.k.a. Daniel P. McKinney, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff named thirty-nine defendants in his complaint, including Rita Diaz. As to Diaz, plaintiff alleges medical malpractice and deliberate indifference to plaintiff's medical needs, arising from an examination by Diaz while plaintiff was a pretrial detainee.

Pending is Diaz's motion for summary judgment. For the following reasons, the motion shall be granted.

**Background**

On June 12, 2003, police officers arrested plaintiff after a pursuit involving law enforcement officers from several jurisdictions. He alleges that officers struck him with a police vehicle and used excessive force, inflicting numerous blows to his back, neck, and head. He claims he immediately requested medical attention for his injuries, but police took him to Paulding County Jail instead. He states that, despite apparent swelling to his left knee, his repeated requests for medical attention were disregarded.

Plaintiff completed an inmate medical form at the time of his admission on June 12, 2003. Plaintiff noted on the form that he "has bad knees and is on a no pork diet." (Doc. 48, Att. 1, Ex. A.)

On June 13, 2003, plaintiff completed a dental request form regarding pain in his top left molar, which he had experienced for several months. Diaz reviewed the request, and although the usual procedure for dental matters did not involve her, she instructed plaintiff to take Tylenol as needed for his pain until a dentist had an available opening.

Diaz reviewed plaintiff's inmate medical form on June 15, 2003, and met with plaintiff to discuss his medical history. This process included reviewing his inmate medical form with him and performing a basic physical exam. During this meeting, Diaz took notes concerning plaintiff's medical history on a form titled "Physical Examination Form."

Throughout the examination, Diaz did not believe that plaintiff was overly concerned about his knees or back. Diaz also states that plaintiff never mentioned anything about receiving injuries while being arrested. Diaz noted on the physical exam form that plaintiff complained of occasional back and knee pain, suffered a prior ACL injury, and referenced upper molar pain which had existed for a number of months. Plaintiff did not mention any recent injuries to his back, neck and head, or that his legs were swollen.

Diaz completed a basic physical examination of plaintiff at this time. The exam consisted of checking his heart and lungs, checking his mouth and throat, and taking his temperature and blood pressure. Diaz, additionally, performed a cursory dental exam since plaintiff complained of pain. Plaintiff voluntarily showed Diaz his knee. Diaz did not notice any bruising or swelling, nor did she notice any limping by plaintiff.[1]

---

[1] While plaintiff makes allegations, that if supported by evidence may raise a genuine issue for trial, plaintiff has failed to produce any evidentiary support for his factual contentions. Namely, plaintiff alleges that he voluntarily showed Diaz his knee to bring her attention to the severe swelling and damage. Plaintiff, further asserted, that Diaz mistakenly believed that his knee injury was the result of an ACL or similar injury based on the extent of pain, disfiguration, and swelling. Plaintiff contends that Diaz made no notice of surgical scars or incision markings consistent with an "ACL" injury on his knees and that he never had any ACL

2

On June 20, 2003, plaintiff completed a medical request form and a dental request form. On the medical form he complained of "back and knee injury requiring x-ray; routine examination." On the second medical and dental request form, plaintiff wrote: "Emergency acute tooth pain requires treatment of cavity." Diaz reviewed these forms on June 24, 2003, and signed them.

Dental matters are usually arranged with dentists. Because, however, plaintiff wrote that it was an emergency, Diaz made arrangements to have plaintiff seen at the Paulding County Hospital the same day for both complaints. Diaz's involvement with the plaintiff's medical treatment ended here.

## Discussion

Plaintiff asserts two causes of action against Diaz: a state law medical malpractice claim and a § 1983 claim for deliberate indifference to known medical needs. Diaz seeks summary judgment on the basis that she is protected by qualified immunity on both claims and contends that she conformed to the standard of care of a jail nurse. Because I find that Diaz is entitled to qualified immunity on both claims, Diaz's motion for summary judgment shall be granted.

### A. Deliberate Indifference Claim and Qualified Immunity

---

or other surgery to either knee.

Federal Rule of Civil Procedure 56(e) requires the nonmoving party (i.e., the plaintiff in this case) to go beyond the pleadings and present some type of evidentiary material in support of its position. Plaintiff presented evidentiary material by filing an affidavit, but the affidavit failed to assert the fact that Diaz actually saw the swelling in plaintiff's knee or commented about it. Because plaintiff has failed to present evidentiary material in support of his position that Diaz was aware of his injury, I cannot properly consider plaintiff's factual contentions.

To prevail on a qualified immunity claim, Diaz must show evidence that she is a government official performing a discretionary function who is entitled to qualified immunity. *See Sanderfer v. Nichols,* 62 F.3d 151, 153 (6th Cir. 2004). Diaz, additionally, must provide evidence that her actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To survive a qualified immunity defense, the plaintiff must show that he "has been deprived of a right secured by the Constitution and laws." *Baker v. McCollan,* 443 U.S. 137, 140 (1979).

The Supreme Court held in *Saucier v. Katz,* 533 U.S. 194 (2001), that resolution of claims of qualified immunity involves two steps. First I must determine whether the facts alleged suffice to show a constitutional violation. *See Greene v. Barber,* 310 F.3d 889, 894 (6th Cir. 2002) (citing *Saucier,* 533 U.S. at 201). If, viewing the facts most favorably for the plaintiff, he can prove no violation of any of his constitutional rights, no further inquiry concerning qualified immunity is required. *Id.* If, however, a jury could find that the plaintiff's constitutional rights were violated, the next step is to determine whether the right was clearly established. *Id*.

In the present case, plaintiff alleges that Diaz was deliberately indifferent to his medical needs by failing to examine him until two weeks after his arrest, not giving him a proper examination, and failing to refer him for medical or dental treatment.

Deliberate indifference to a prisoners serious illness or injury constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment and, therefore, states a cause of action under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).[2]

The standard of deliberate indifference requires the medical provider's indifference to be so severe as to offend the "evolving standards of decency."*Estelle,* 429 U.S. at 106; *see also e.g., Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976) (inmate was denied access to doctor for eight days while suffering from a bleeding ulcer, during which time he continued to suffer and his repeated requests for treatment were unanswered);*Williams v. Vincent,* 508 F. 2d 541 (2nd Cir. 1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump); *Thomas v. Pate,* 493 F. 2d 151 (7th Cir. 1974), *vacated on other grounds sub nom. Cannon v. Thomas,* 419 U.S. 813 (1974) (injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction); *Fitzke v. Shappel,* 468 F.2d 1072 (6th Cir. 1972) (seventeen-hour delay in medical attention for brain and leg injuries).

A claim of deliberate indifference has both an objective and subjective component. *See Broan v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires an inmate to show that

---

[2] The Eighth Amendment, however, does not apply to pretrial detainees, such as the plaintiff, because the state has not secured a formal adjudication of guilt. *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983); *Graham v. County of Washtenaw,* 358, F.3d 377, 383 (6th Cir. 2004).  The Fourteenth Amendment, rather, "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eight Amendment rights of prisoners." *Graham v. County of Washtenaw,* 358 F.3d 377, 383 (6th Cir, 2004). Thus, although the Eighth Amendment is not directly applicable to the plaintiff, its deliberate indifference standard is to be applied under the Fourteenth Amendment. *See id.; Watkins v. City of Battle Creek,* 273 F.3d 682, 686 (6th Cir. 2001).

the alleged deprivation is "sufficiently serious" and poses "a substantial risk of serious harm." *Id.* To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind" (*i.e.* "the official knows of and disregards an excessive risk to inmate health or safety"). *Id.; see also Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

The Sixth Circuit in *Sanderfer* v. Nichols, 62 F.3d 151 (6th Cir. 1995), a case similar to the one at hand, held that possible negligence in diagnosing a medical condition by a jail nurse did not constitute deliberate indifference and accordingly, that the nurse was entitled to qualified immunity. *Id.* at 154-55. The plaintiff in *Sanderfer* claimed that the jail nurse "failed to review . . . [the inmate's] medical history, failed to discover . . . [his] hypertension, failed to recognize that he should have been examined by a cardiologists, failed to restrict his activities to those appropriate for someone with a heart condition, and prescribed inappropriate medication, and that as a direct result of this deliberate indifference to his medical needs, . . . [he] died." *Id.* at 154.

In finding that the nurse was not deliberately indifferent to the decedent's medical needs, the Court reasoned that there was no evidence the nurse repeatedly failed to respond to the decedent's medical needs, and that the nurse's "involvement" with decedent was limited to a single encounter during which she performed an exam, made a diagnosis, and prescribed medication. *Id.* at 155.

The Court, additionally, found that "[t]he record . . . simply [did] not contain facts from which a jury could conclude that [the nurse] was aware from facts for which she could and did draw an inference that her conduct posed a substantial risk of serious harm to [the decedent]." *Id.* Thus, the Court concluded that the nurse was not deliberately indifferent because she was not aware decedent had a substantial risk of heart failure when she made her diagnosis. *Id.*

6

In the present case, plaintiff has not shown that the alleged deprivation of medical care was "sufficiently serious" or that Diaz acted with "a sufficiently culpable state of mind." Diaz's responsibilities as a jail nurse include reviewing inmate medical forms, interviewing and performing very basic physical exams of new inmates, and reviewing medical request forms. Plaintiff completed an inmate physical form at the time of his admission on June 12, 2003, and Diaz reviewed it on June 15, 2003. The form did not reference any serious medical need or emergency, but, rather, that plaintiff "has bad knees and is on a no pork diet."(Doc. 48, Att. 1, Ex. A.)

Diaz, additionally, met with plaintiff on June 15, 2003, to review his medical form and perform a basic physical exam. During the physical exam, plaintiff did not act overly concerned about his knees or back and did not mention anything about receiving injuries while being arrested. Diaz, furthermore, did not notice any bruising or swelling of plaintiff's knee.

On June 20, 2003, plaintiff filled out two more medical and dental request forms. On one form he complained of "back and knee injury requiring x-ray; routine examination." On the second, Plaintiff wrote: "Emergency acute tooth pain requires treatment of cavity." Diaz reviewed these forms on June 24, 2003, and signed them. Though dental matters are usually arranged with dentists, because plaintiff wrote it was an emergency, Diaz made arrangements to have plaintiff seen at the Paulding County Hospital the same day for both his complaints. That was the extent of Diaz's involvement with the plaintiff's medical treatment and care.

On these facts, plaintiff has failed to show any evidence that Diaz acted with deliberate indifference to his medical needs. Similar to the record in *Sanderfer,* there is no evidence that Diaz repeatedly failed

7

to respond to the plaintiff's medical needs, nor is there any evidence that Diaz was aware of facts from which she drew the inference that her conduct posed a substantial risk of serious harm to the plaintiff.

Following the reasoning in *Sanderfer*, the plaintiff here has failed to show that Diaz was aware that he was in need of urgent medical care for his knee or back. Because plaintiff has failed to show that he has been deprived of a constitutionally protected right, I find that Diaz is entitled to qualified immunity. Thus, Diaz's motion for summary judgment shall be granted on plaintiff's § 1983 claim.

### B. State Medical Malpractice Claim

### 1. State Law Immunity

Diaz cannot be found liable for medical malpractice, because she is immune from suit. Ohio Revised Code § 2744.03(A)(5) states:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

Pursuant to O.R.C. § 2951.02, a political subdivision is defined as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."

In the case at hand, Diaz is an employee of the Paulding County Jail, which is operated by Paulding County. Paulding County is a political subdivision within the meaning of O.R.C. § 2951.02. Because Diaz

is an employee of a political subdivision, she is immune from liability as to plaintiff's claim, unless she exercised judgment or discretion with malicious purpose, in bad faith, or in a wanton or reckless manner. As indicated in the analysis of plaintiff's deliberate indifference claim, plaintiff has not presented any evidence that Diaz acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

Thus, that Diaz is entitled to qualified immunity under O.R.C. § 2744.03(A)(5), and Diaz's motion for summary judgment shall be granted.

### 2. Compliance with the Standard of Care

In the alternative, Diaz is entitled to summary judgment on plaintiff's medical malpractice claim because there is no genuine dispute as to Diaz's compliance with the standard of care.

To prevail on a claim of professional negligence in Ohio, the plaintiff must show evidence of the recognized standard of care and that the nurse in question negligently departed from that standard. *Bruni v. Tatsumi,* 46 Ohio St. 2d 127, 131 (1976). The plaintiff must demonstrate by a preponderance of evidence that Diaz caused injury by failing to do that which a nurse of ordinary skill, care, and diligence would have done in similar circumstances. *Id.* Proof of deviation from the standard of care generally must be provided through expert testimony. *Id.*

Diaz, by her affidavit, attested to her qualifications and her expertise as an R.N., and she expressed her opinion that her limited interaction with plaintiff conformed with and was well within the accepted standards of medical nursing care. (Doc. 48, Diaz Att. 1, Aff. at ¶ 4.) Diaz's affidavit, absent any opposing expert testimony, establishes the standard of care. *Hoffman v. Davidson,* 31 Ohio St. 3d 60, 62; *see also Sauders v. Cardiology Consultants, Inc.,* 66 Ohio App. 3d 418, 420 (1990). ("When a movant in a medical claim supports his motion for summary judgment with expert testimony that demonstrates

9

compliance with the standard of care . . . , absent expert evidence to the contrary, this unopposed medical expert testimony establishes the standard of care and the movant's compliance.")

Plaintiff, in his response to Diaz's motion, has failed to produce any expert testimony as to the applicable standard of care or the existence of a deviation from that standard. In the absence of a genuine dispute as to Diaz's compliance with the standard of care, Diaz's motion for summary judgment on plaintiff's medical malpractice claim shall be granted.

## Conclusion

In light of the foregoing, it is

ORDERED THAT Diaz's motion for summary judgment be, and the same hereby is, granted. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge